Ethiopian Restaurant v. DeKalb County Mr. Wiggins. Good morning. Good morning. May it please the Court, Kerry Wiggins on behalf of Sheba. So, I think I know what the Court is thinking. We've got the two orders from the Court asking us to. You know what I'm thinking. I do. I think I do. So, the question on First Amendment standing, if I may, the reason there is even a First Amendment claim in the case is because Sheba was, there was a determination, and this is in the complaint, paragraphs 39, 40, 50, 58, and 69. There was a determination that although the county was going to treat Sheba as a grandfathered use for a late night establishment, it was not going to do so as far as a nightclub. And so, we looked at the definition of nightclub. Obviously, that's embedded in the section that addresses the SLUP process. And we just, we said, well, it's true, it is true, as this Court's written order from a few weeks ago said we didn't apply for a SLUP. When I say we, Sheba. Sheba didn't apply for a SLUP, but it's very clear that Mr. Baker and others in the county were enforcing or telling Sheba that it was now a nonconforming nightclub and it needed a SLUP. So, there was the threat of the enforcement of the SLUP. There were tickets issued against Sheba for being a nonconforming or operating outside the letter. And challenged the ordinance as being a violation of the First Amendment if you want to be a nonconforming entity, not subject to the ordinance. I understand, Judge. And I don't, it's just as simple as this. You're right that it wants to be recognized as a nonconforming use. That is true. But in the event that that doesn't happen, as the Zoning Board of Appeals has determined, it wants the alternative argument to say, well, that's fine. Now, you're subjecting me to a prior restraint. And that's just Lakewood versus plain dealer publishing. That's the reason. So, we, you know, we're being told, Sheba's being told it has to apply for the SLUP. And the response to that is, number one, we're grandfathered. We don't need to. But in the alternative, it's an unlawful prior restraint. You don't have any business applying it to us. So, that's, that is it. And I will say that this case is really in the main, it's an equal protection case. I know we've pled a First Amendment count. But it is, it is, it is, by and large, a federal equal protection case, which gets me to the second query from the Court about whether we were, or Sheba was accorded due process under the Fourteenth Amendment. The first question the Court had was, could Sheba have raised its U.S. constitutional claims in the ZBA? The answer to that is yes. The caveat being, you know, at the ZBA hearing, you get five minutes, five minutes. You can't call witnesses. You can't cross-examine witnesses. You, you know, it's, it's not much of a hearing. But you can raise, in those five minutes, you can raise, you can say anything you want. Have at it. The problem, and that gets to your second question, would, if that were the case, that Sheba could raise a U.S. constitutional claim or voice it in the ZBA hearing, would it get a full and fair opportunity to litigate that claim? And presumably in the state courts. And the answer to that is emphatic no. We've briefed that. I, it just boils down to this. If you read the complaint start to finish, which I understand the panel has. DeKalb County is, if those facts are true, is, is, is misbehaving on a grand scale. They've ticketed the club. Back to what you said, though, about the full and fair opportunity to litigate. Correct. If Sheba had raised the federal constitutional claim in the zoning board, that's a prerequisite for bringing the claim to the Superior Court, isn't that right? Where it could be fully and fairly litigated? It's, it's, Judge Breyer, it's a prerequisite, yes, to the Georgia Superior Court. And, in fact, they did. It's not in the, it's not in the complaint. But the zoning attorney did submit written objections and did raise. Did litigate the claim before the board too, right? Well, when you say litigate, I'm going to go back. You could raise that argument before the board, right? You could, and I go back to Fuentes, and yes, it has to be a meaningful hearing. I'm, I'm saying it wouldn't be a meaningful effort to litigate this type of claim before the zoning board of DeKalb County. It's just not. But Judge Breyer, to answer your question, yes, that is a condition present. You do need a voice, the constitutional objection to preserve it. And, you know, it occurs to me there's some types of, of claims. Call them 1983 claims. There's some types of U.S. constitutional claims that conceivably could be litigated before a board and then on into a certiorari proceeding. If I had a facial challenge to a sign ordinance, for example, that didn't require any evidence, discovery, things like that. There were no damages, for example. Let's just say it was a, it was a signed revocation case. What about in SHIBA 1? SHIBA 1. Could they have been, let me ask the same question. Sure. Could these constitutional claims, without having to go through an administrative process, because none had happened at that point, could they have been raised there? They could have been raised there. That's true. And is that problematic if we find a to dismissal issue? Well, certainly we're here on a to dismissal issue. I don't think, I, the reason it's not problematic is because the dismissal of the certiorari, SHIBA 2, is not the same cause of action. But if I, if for some reason the panel finds against you on that, I'm not saying we are, but assuming we do, the fact that you could have raised it in SHIBA 1 would be problematic, right? Well, Judge Luck, when you say could have raised it. The constitutional claims that are raised in federal court. I apologize for not being specific. No, that's fine. You know, DeKalb Superior Court is a court of general jurisdictions, can entertain federal claims. We can't dispute that. Right. So if we found against you on the to dismissal issue, then that would be problematic for the rest of the res judicata elements that you could have raised the constitutional claims in SHIBA 1, irrespective of the zoning board issue. If you find that the SHIBA 2 is a true blue second dismissal of the same case, that's a problem. Okay. I just wanted to be clear on that. That's a problem. Thank you. Tell me this. It did seem to me that under Georgia law, that for the res judicata defense to apply, for it to be the same cause of action, the claims have to share the entire set of operative facts and that your claim of equal protection violations, section 1981, section 1985, with allegations of racial discrimination and a class of one claim are different. Different from the mandamus and the due process claims. They are, Judge. They are. They are. It seems to me the mandamus and due process are barred by res judicata, but the equal protection claims, I think you might have a better argument. Judge, that's what I'm telling you in all candor. That's really the thrust of this case. It's an equal protection case. DeKalb County is not administering these ordinances and the quasi-criminal ordinances, just not administering evenly. And let me just, a couple of observations. That's not barred. If those claims are not barred by res judicata, you're happy. I'm delighted. I'll go to the sidebar. How do we square what Judge Pryor just read with our decision in Starship, which I understand to be applying Georgia law, which said that, quote, when resolving that issue being res judicata, Georgia courts look to see whether the claims arise from the same subject matter. And then later in applying that, saying that Wagner's denial of the Starship's application for a business license claimed, sorry, that all of these claims arose from the same facts. This is in the conclusion that res judicata applies. All of these occasions arose from the same facts that it asserted in the mandamus petition that Starship met the county ordinance and the county erred when it denied Starship's application. Sorry, that took so long to say. That's okay. That's fine. So Stardust, obviously, the state court granted the mandamus petition. There were issues with, you know, the identity of the parties and their privies. That wasn't addressed. Obviously, it wasn't raised below for Stardust whether the individual defendants were. But it's the test that seems to be a rise from the same subject matter. Some preparatory distinctions. But yes. Again, Stardust, they were denied a business license by, what was it, Coweta County or something? They were denied a business license and their beef was really a rigmarole for whether they should or shouldn't be given the business license. Yes. In this case, there is the issue of whether there was a proper revocation of the CO and then the business license. But it is much bigger than that. It's not just, we're not just tit for tat on whether we do or don't get the business license. In fact, the business license is a denial without prejudice. I've seen them over my time. You're okay. You're answering his question. Yes. And they've reapplied. They've reapplied for an alcohol license. It's not in the record. But they have since applied and obtained an alcohol license. They have since applied and obtained a CO. They have since applied, excuse me, yes, in the business license. So this is a bigger. Okay, Mr. Wiggins. Thank you, Judge. You got it. I think you can. Thank you. Collect your thoughts and prepare your five minutes of rebuttal. Mr. Bryan. Good morning. May it please the Court. My name is Bennett Bryan on behalf of the county and the individual county officials named in this case. And Georgia law bars this action. And Georgia law does not violate due process. And this Court should not hold that Georgia law violates due process for several reasons. One, because, Your Honor. I mean, let's talk about whether Georgia law bars the entire action, okay? Yes, Your Honor. It's not clear to me that it bars legal protection claims. Well, Your Honor, again, under Georgia law, res judicata applies to claims that were brought or could have been brought. And again, this is a factual analysis. And so, you know, the Georgia Supreme Court said in Bradshaw v. Dayton, 270-GA-884, that in that case, the Georgia, or the Superior Court did litigate an equal protection claim. Doesn't Georgia law require that all the operative facts be the same and that they've got allegations of racial discrimination that weren't at issue in the state actions? Well, again, Your Honor, it is about what they raised and what they could have raised. And they could have raised those questions. Yeah, you could raise, as I understand Georgia law, you could raise any claim based on these facts. But the facts that were being alleged there had nothing to do with racial discrimination. Well, Your Honor, I would respectfully disagree with that because what the facts that were raised in those cases were the actions of the county and actions of county officials and in issuing citations and conducting inspections and in issuing administrative decisions. And the question was whether or not those officials were properly applying the law and whether their decisions were arbitrary, whether those decisions and actions were targeting SHIBA. So I'm hearing, and this may be my confusion, and correct me, please, my confusion. Yes, Your Honor. I'm hearing something. Judge Pryor keeps quoting Georgia law to say the operative facts. And if that's the standard, I want you to say so. What conclusions we'll draw from that, we might disagree with, but whether that's a standard. But I'm looking at Starship and the Georgia law that it cites, and it doesn't mention anything about operative facts. What it does say is that Georgia courts look to see whether the claims arise from the same subject matter. And quoting from Lawson v. Watkins, a 1991 decision of the Georgia Supreme Court, quote, one must assert all claims for relief concerning, and this is actually highlighted there, the same subject matter in one lawsuit and any claims for relief concerning the same subject matter, which will not be raised. That maybe it's the same, maybe it's not, but all operative facts would seem to be different than arising out of the same subject matter. And what is the proper test? So the proper test is whether it arises out of the same set of facts. And that is Crow v. Elder. That was a 2000. That's a Cohen v. CDC software court case from the Georgia Supreme Court in 2018 that the operative facts necessary to the causes of action are different in the two cases. The latter suit is not upon the same cause of action as the former, although the subject matter may be the same. And even though the causes of action arose out of the same transaction, that's what the Georgia Supreme Court said two years ago. That's true, Your Honor. And again, the way, the manner in which that particular issue comes up in most of Georgia case law is when there are new facts that have occurred after the previous adjudication before those necessarily arise from a different set of facts if the facts occurred after the previous adjudication, and that was the issue in Morrison v. Morrison. And so, again, it is, the court did say that it was, it wasn't overruling any previous cases that applied the subject matter test. However, it did just clarify that we're looking at generally the same set of facts. And the same set of facts are present in each one of the cases here. So subject matter is not the same, it's not enough. Same transactions, not enough. It has to be the same entire set of facts. And my concern is they didn't allege anything about racial discrimination in the state action. Well, I would say, Your Honor, if we would look to the record at the ZBA hearing, that was actually brought up that there's been some allegations that the county was targeting, that was targeting SHEBA. And necessarily an allegation It didn't say based on race? Excuse me? Based on race? It doesn't specifically say based on race there, but there's, but again, that is, that is certainly within the same, that is, the exact same facts that would apply to a targeting claim would apply to an equal protection claim. I mean, targeting really is saying that there's an equal protection issue here. And the court, and the zoning board specifically said, you know, there's been allegations here that the county has targeted SHEBA. And so it's, because those same facts would apply to targeting, to equal protection, discrimination, those do come from the same, from the same facts. And they arise out of the same set of facts. And just so I understand the clarification here, and I think this is what you said, if new facts arise from litigation one to litigation two, and the allegations don't have the same set of operative facts, then that wouldn't be covered by the Cohen case that Judge Pryor cited from. But if the facts were the same from litigation one to litigation two, and they just decided to allege some more in litigation two over litigation one, you can't just sit on your hands. You had to have raised them earlier than later. Am I right or wrong in that that's the distinction? Yes, Your Honor. You're correct about that. And Cohen says that? Well, that's what Morrison says. Okay. And I believe that Cohen was, you know, relying on that line of cases that said that facts that arise out of, that arise subsequent to the initial lawsuit. But also, of course, that isn't a bright line rule. That's not the only time that Cohen would apply. However, that is generally the way in which it has arisen in Georgia case law. And in this case, there are, especially when we consider the third voluntary dismissal, that extends that time frame in which the previous judgment would preclude later facts that have arisen after the initial lawsuit was filed. Hasn't your opposing counsel said that we learned after this litigation or as this thing developed that there were emails between the citizen and the commissioners and based on this new information that seemed to be more broad about targeting Ethiopian restaurants in this neighborhood as opposed to other restaurants, we now can allege these other facts? Isn't that what has been argued and alleged? It has, Your Honor. And the facts that the facts that have been alleged subsequent to the Sheba one, again, they weren't subsequent to Sheba twos, you know, final adjudication and certainly not Sheba fours. But that that is that is that is the argument. However, just because facts are later discovered after a judgment. Let's let's talk about that. I mean, you keep saying that that's what Cohen's about. But I'm going to read you from Cohen. OK, and this is the last page of the decision. Page 676 of the volume 816 of the Southeastern Reporter second series. Although both of Cohen's lawsuits are related to the termination of his employment with CDC, the two suits are based on different wrongs and different sets of operative facts. Accordingly, the suit suits contain different causes of action and the second suit is not barred by res judicata. In the first suit, Cohen raised contractual claims against CDC for failing to pay amounts due under its employment contract and the entire set of facts necessary to support those claims centered on whether CDC breached any terms of that contract. In the first suit, then, the alleged wrong was CDC's failure to pay amounts contractually owed. In the present suit, the entire set of facts giving rise to Cohen's claims of defamation, false light, and disclosure of private facts, intentional infliction of emotional distress, and attorney's fees center around CDC's alleged defamatory statements made in an SEC Form 6K filing. It doesn't have to do with later discovered facts or anything like that. This distinction that the Supreme Court of Georgia drew was, to me, kind of a claim by claim distinction. And your breach of contract claim had facts to support it that don't necessarily or are not necessarily coextensive with the tort claims that you're bringing in the current suit and, therefore, this suit's not barred by res judicata. And it seems to me very similar to this problem in this case where there's no claim of racial discrimination in the earlier suit. Well, again, Your Honor, the facts that would support an equal protection claim are the same facts that would be applicable to the claims that were actually raised. To support the due process and mandamus claims that you would have to prove that there had been racial discrimination in that? If you, to prove that, to prove that the actions of the county were arbitrary and were targeting that... But necessarily, you could say that it's arbitrary without it being racially discriminatory. Well, that's true, Your Honor. However, if the, if Sheba 1 is the hang up here and we can just focus on Sheba 2 and Sheba 4 because we have two, you know, we have more, if the court were to determine that Sheba 1 does not apply to this analysis because it's too different, we still have Sheba 2 and we have Sheba 4, which are two voluntary dismissals. And any of those are their claims of racial discrimination? Again, the, both Sheba 2 and Sheba 4 involved a review of the Zoning Board of Appeals decision and at the ZBA hearing, the, at the ZBA hearing, the facts that were raised there and the attention brought to the county officials actions would have the same factual overlap. Targeting, targeting a business would be the same facts as treating a business differently than other businesses. And, and so it would be, it would arise out of the same facts, Your Honor. And, and again, I would say that, you know, we have a Georgia Supreme case, McCracken versus City of College Park that specifically says the claims that could have been raised in a petition for cert bars later claims. Cohen, to me, is the latest pronouncement to me. If there's something more recent you think that we ought to be looking at, please tell me what it is. Well, again, Your Honor, there was the, the, the Cohen case does, does, while it, while it clarified what the, what the standard was, it didn't, it didn't, it didn't overrule other cases and McCracken is more on point because. It's an authoritative construction of, of Georgia law that, that binds us as to how to understand all those earlier cases. Well, and, and again, and, and so is, and so is McCracken versus City of College Park 259 GA 490. And a petition, in that case, a petition for cert is res judicata towards later claims for damages and for, and for other types of, of relief if those, if the claims could have been raised in the petition for cert. And another thing, Your Honor, I think that it's important to keep in mind here is that, is that this is a two dismissal case. Actually, it's really a three dismissal case. And so this, this, this, this raises slightly different issues because if you look at the text of the, of Rule 41 under federal law and under state law, it specifically says that, that, you know, that a involuntary dismissal that, you know, for lack of subject matter jurisdiction is not an adjudication on the merits. And there isn't a similar, there isn't a similar provision in the voluntary dismissal part of either statute. And that shows because, because there are less concerns, there are less due process concerns and fairness concerns when the plaintiff is in, is in control. When the plaintiff chooses the venue, when plaintiff chooses the claims, when plaintiff chooses to voluntarily dismiss its, the, you know, the same case three times in a row and purposefully avoid having its day in court, that plaintiff cannot credibly argue that it's unfair to apply Georgia, or to apply res judicata to, to a four, in this case, a fourth lawsuit. And, you know, I've not been able to find any case in any jurisdiction holding that the application of the two dismissal or three dismissal rule is, violates due process. For our purposes, though, the res judicata analysis is controlled by Georgia law, right? Yes, Your Honor. And, and again, under Georgia law, this case is barred by res judicata. And, and as to the standing argument, I can address that briefly. We have, I think the case that is most on point, it is an unpublished case. It's Starship Enterprise of Atlanta versus Fulton County, 251 Federal Appendix 660. I can assure you, no unpublished opinions ever the most on point. Well, this, this, this particular one has a similar situation. In that case, the, the county determined that a, that a business had more than 25 percent of its merchandise was, was adult. And therefore, it needed to apply for a special permit. The plaintiff said, no, we don't have to, it doesn't apply to us. We're not an adult establishment. And therefore, we don't need the permit. And the, and the 11th Circuit held that there was no standing to challenge the provision that required them to have a special land use permit. Thank you, Your Honor. But, but here, here they say they are a late night establishment and a nightclub, right? Yes, Your Honor. So that's a big distinction from the case that you just told us about. Well, it, it's, it's, but what the, the underlying, the underlying crux of that case was whether the ordinance itself caused the violation or whether it was the county official's actions that caused the violation. And in that case, the court said because the plaintiff alleged that it was not subject to, or did not need a special land use permit, and in this case, Sheba says we do not need a special land use permit, then the, then they don't have standing to challenge that provision, Your Honor. What, what about his alternative argument? Again, we have to look at how it's pled, and in, in, on the face of the complaint, they plead and say that they are not subject to 4.2.32. And so we have to assume at this stage, we have to take plaintiff at their word. Thank you, Your Honor. Mr. Wiggins. Yes, Judge. So the Cohen case that you cited, along with the Brinson case that's in our brief, and a decision by the Georgia Court of Appeals last year, Carson versus Brown, which Judge Dillard wrote, all these cases reflect a constricting of the idea of what a cause of action is under Georgia's race judicata case law. And I agree with the court 100 percent on the way it's interpreting it. One thing Justice Melton said in the Cohen case was you focus on the wrong that's asserted. That's the primary, that's the primary task. In the ZBA hearing, the question was whether DeKalb County was wrongfully designating Sheba as a new use, as a nightclub. And the evidence in that hearing, and that's at Doc 27-1, that's the transcript, talked about, there were pictures and, you know, web posts about dancing and customer and music at the business before the slup was adopted or after the slup was adopted. And that's the issue. That was the issue. No race, none of that. So, and in the 1983 case, obviously, we're talking about a system-wide, District 2-wide, ongoing equal protection problem. So that's our case. Thank you, Judge. Thank you, Mr. Wiggins. We understand the case will be in recess until tomorrow morning. Thank you.